Edwin P. Drew, Complainant, *v.* Levi Gant, Defendant.

*Chancery.—Appeal from Umpqua.*

1. The board of commissioners of Umpqua County organized in December, 1851, previous to the designation of a *house* for the holding of courts—*Held,* it was a sufficient compliance with the statute, for application for ferry licenses, to post notices in four of the most public places in said county.
2. Facts constituting a right to a ferry.

This is a case in chancery ; and the question submitted is, whether Drew, who keeps what is called the Trenton Ferry, on the Umpqua River, is entitled to an injunction to restrain Gant from keeping one at the same place. The bill shows that Ferguson and Woodward, in May, 1851, occupied the land—the one on the north, the other on the south side of the river—where said ferry is situated. That Drew, by an arrangement with said occupants, procured a boat, tackle, &c., and set up the business of ferrying at said point. That on the 6th day of May, 1851, he posted up eight notices of his intention to apply for a license, &c. That on the 10th of June, of the same year, Gant took possession of the land at the northern terminus of said ferry. That on the third of December, 1851, after four weeks notice duly given by Drew, it was ordered by the commissioners of Umpqua County that he should be licensed to keep the Trenton Ferry, upon his paying $3 to the county treasurer of said county. That on the 8th of April, 1852, he gave a bond, and paid $25 for said ferry. That the $3, mentioned in the order of 1851, he paid on the 10th of September, 1853 ; since which time, defendant has kept a ferry at the same place, &c.

*L. F. Grover*, for plaintiff.

*W. W. Chapman*, for defendant.

WILLIAMS, C. J.   Gant controverts the right of Drew to an injunction, upon the following grounds :

*First.*—Because Drew did not give the notice required by law, of his intention to apply for a license to keep said ferry. Section 1 of the act regulating ferries, page 153, *General Laws of Oregon*, provides, that an application for a ferry license shall not avail a person, unless " his intention in relation thereto shall have been previously given, by publishing in some newspaper printed in this territory, or advertised on the door of the court-house, or at the door of the house where courts are usually held, and in three of the most public places in the county in which such ferry is proposed to be established, for four weeks successively next preceding the sitting of the court at which the same shall be made."

Umpqua County was organized in 1851, and the Trenton Ferry was established on the application of Drew, at the first session of the board of county commissioners in that county. There was therefore no " court-house," or house where the courts were " usually held," on which Drew could advertise, and the most that he could do was to put up notices at four of the most public places in the county.   We learn from the testimony, that the commissioners held their December term in 1851 at the residence of one Levins, in Elkton, who does not remember to have seen on his house, prior to that time, one of Drew's notices.   There is nothing to show, and it is not at all probable, that this house was designated as the place for holding the commissioners' court before the day on which the court commenced.   Gant does not deny that Drew advertised in four of the most public places in the county, for four weeks next preceding the court ; but denies that he advertised on the court-house, or in the newspaper, as specified in the statute.   Chadwick testifies that he saw Drew's advertisements in five or six different public places in the county ; that he saw one on " the big tree in Elkton, near Levin's house ;" that he saw them frequently through the summer, from as early as June or July till October and November,

1851. Levins also says he saw one in the spring of 1851. Two witnesses state that they did not see these notices, but such testimony is obviously entitled to little or no weight. From the evidence, it is clear that the people of Umpqua County were as fully advised of Drew's intended application for a ferry license, as if a notice to that effect had been put up on the door of Levin's house; and in view of the difficulties under which he labored, we hold that there was on his part a compliance with the substance and spirit of the statute. True, it does not appear that he made publication in a newspaper of the territory; but he had a right to adopt the less expensive, and, at that time, far more suitable way of advertising in the county, and this mode he did adopt, and followed as far as possible. Counsel for plaintiff have contended that proper notice by Drew ought to be presumed from the allowance to him of the license by the board of county commissioners, but, without determining this point, we place our decision upon the ground that necessary notice had been proven.

Gant alleges, in the second place, that no bond was given by Drew, as required by statute.

Huntington testifies that he was clerk of the board of county commissioners at the April term, 1852, and understood that the bond then made by Drew was given under a license issued to him at that time to keep the Trenton Ferry for the ensuing year. The bond is before us, and is not conditioned to keep said ferry " one year," but is conditioned " to well and truly keep said ferry," without any limitation as to time. Again, this bond was given as soon as it could be after the establishment of the ferry, for it had to be " approved by the court," and there was no court to approve it till April, 1852. If there was an order in 1852, as Huntington testifies, allowing Drew to keep said ferry for one year, it amounted to nothing, for, in the first place, the commissioners had no power to make such an order; (*Cason* v. *Stone, Oregon Reports,* 1853, *pages* 4 *and* 5;) and, in the second place, Drew was entitled to the ferry by virtue of the order made in De-

cember, 1851, and this bond is in all respects applicable to, and in accordance with, that order.

Gant objects to the injunction, in the third place, because the $3, mentioned in the order of 1851, was not sooner paid. There was no treasurer of Umpqua County at the time the said order was made; and Huntington testifies that Drew tendered the said $3 to him, but he refused to receive it. On the 8th of April, 1852, Drew paid to Huntington, then acting treasurer of said county, $25 for a year's license; but as such license was a nullity, the $3 may be regarded as paid at that time, and then it will follow that it was paid as soon as any one was authorized to receive it.

Independent, however, of this consideration, on the 10th of September, 1853, Drew paid to the treasurer of Umpqua County the $3, pursuant to the order of 1851, so that, at any rate, his right from that time became indisputable. Drew may have delayed the payment of the $3 at his peril; but as no valid license was granted to any other person during such delay, his right, after he did make said payment, was not thereby impaired. These facts, we think, warrant the conclusion that Drew has an exclusive right to the "Trenton Ferry," and is, therefore, entitled to an injunction against Gant, who does not pretend, in this case, to have any license to use, or in any manner to interfere with such ferry.

Injunction granted.